IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

KELLY GREENE,

   Plaintiff,

    v.

AETNA LIFE INSURANCE
COMPANY,

   Defendant.

CIVIL ACTION FILE
NO. 1:11-CV-3695-TWT

ORDER

This is an ERISA action to recover benefits under a group medical insurance plan. It is before the Court on the Plaintiff's Motion for Summary Judgment [Doc. 20] and the Defendant's Motion for Judgment on the Administrative Record [Doc. 21]. For the reasons set forth below, the Court treats the motions as requests for a Trial on the Papers, and decides the case in favor of the Defendant.

I. Judgment on the Administrative Record

Rule 52(a)(1) provides the appropriate vehicle for judgment on the administrative record in ERISA cases. "When a decision is based on the agreed-upon administrative record, judicial economy favors using findings of fact and conclusions of law, not Fed. R. Civ. P. 56, to avoid an unnecessary step that could result in two

appeals rather than one." McInvale v. Metropolitan Life Ins. Co., No. 5:07-CV-459, 2009 WL 2589521, at *1 n. 2 (M.D. Ga. Aug. 18, 2009), citing Doyle v. Liberty Life Assur. Co., 542 F.3d 1352, 1363 n. 5 (11th Cir. 2008); also see Aleksiev v. Metropolitan Life Ins. Co., No. 1:10-CV-3322-SCJ, at *29-*30 (N.D. Ga. Mar. 9, 2012). Both parties have stipulated to the administrative record filed by AETNA. (Pl.'s Br. in Supp. of Pl.'s Mot. for Summ. J., at 1.) Therefore, the Court treats these motions as a Trial on the Papers pursuant to Fed. R. Civ. P. 52(a). "In an action tried on the facts without a jury ... the court must find the facts specially and state its conclusion of law separately. The findings and conclusions may be stated on the record after the close of evidence or may appear in an opinion or a memorandum of decision..." Fed. R. Civ. P. 52 (a)(1).

## II. Findings of Fact

The Plaintiff, Kelly Greene, suffered an injury in August 2008, when the anterior disc in her jaw joint slipped forward, causing her upper and lower jaw to bind together. (AR 296, 299.) The injury caused her severe pain and inhibited her ability to eat solid food. (Id.) The Plaintiff had previously had extensive treatment for temporomandibular joint syndrome ("TMJ") in 2004, but had been asymptomatic following those treatments until the injury of August 2008. (AR 299.) Dr. Ray Morgan, the Plaintiff's treating physician, recommended treatment of Mrs. Greene's

TMJ and anterior disc displacement to alter vertical dimension. (AR 136.) Dr. Morgan then performed a myriad of procedures for Mrs. Greene which he deemed necessary for this mouth reconstruction. These procedures included crowns on teeth numbers 2 through 12 and 18 through 28 at $1,818.88 per tooth, bridge-retainers on teeth numbers 13 and 14 at $1,818.88 per tooth, and a pontic on tooth number 14 for $1,818.88. Furthermore, tooth number 29 was extracted and bone grafted by an oral surgeon and required implant treatment. Teeth numbers 29 through 31 were given implant abutments at $720.00 per tooth and implant crowns at $1,456.00 per tooth.

The Defendant, Aetna Life Insurance Company ("Aetna"), insures Kelly Greene through her husband's employer, Comcast. The coverage includes both medical and dental insurance plans. Aetna does not have a conflict of interest with regards to payments pursuant to the Medical Plan, as Comcast pays these benefits. Furthermore, Aetna utilizes safeguards to separate the claim department from company finances and to ensure accurate decisionmaking. (Pizzemento Aff.)

The Plaintiff contests Aetna's denial of benefits under the Plaintiff's medical plan, and does not dispute the denial of benefits under the Plaintiff's dental plan. (Pl.'s Br. in Opp'n to Def.'s Mot. for Judgment on the Administrative Record, at 9.) The Plaintiff contends that all of her treatments for TMJ should have been reimbursed pursuant to the Plan as "medically necessary as a result of an injury." (Pl.'s Br. in

Opp'n to Def.'s Mot. for Judgment on the Administrative Record, at 9.) The Medical Plan "will only pay benefits for medically necessary services or supplies that are covered health services under the Plan and are not specifically excluded by the Plan." (AR 685.) "Covered services...are provided for the purpose of...treating...injury..." (Id.) Yet, the procedures declined by Aetna are specifically excluded by the Medical Plan. According to the Medical and Prescription Drug Coverage Summary Plan Description ("Medical SPD"), medical benefits under the Plan are specifically excluded for "services, supplies or charges that are...[d]irectly related to the care, filling, removal or replacement of teeth, the treatment of injuries to or diseases of the teeth, gums or structures directly supporting or attached to the teeth, except as specifically described in [the Medical SPD]." (AR 697.) Medical benefits are also excluded for "[t]reatment of...TMJ...with intra-oral devices or with any non-surgical method to alter vertical dimension." (AR 698.)

Aetna reasonably concluded that the declined procedures were non-surgical methods for treatment of TMJ by altering vertical dimension. The Plaintiff has presented no evidence that the declined procedures were surgical. A dental crown is a tooth-shaped cap that is placed over the tooth; crowns are cemented onto the tooth which has been filed down to make room for the crown. (Def.'s Reply Br. in Supp. of Def.'s Mot. for Judgment on the Administrative Record, at 3-4.) If there is a less

invasive way to alter the occlusal vertical dimension,[1] the Court is not aware of it, and the Plaintiff does not state it. Under Plaintiff's reading of "surgical method" which includes crowns, bridge-retainers, and pontics, the Court believes that any treatment of TMJ to alter vertical dimension would qualify as surgical, and thus the exception in the Medical SPD would be rendered completely defunct.

In an effort to correct her TMJ, the Plaintiff has incurred medical bills in the amount of $66,985.00, and the Defendant has reimbursed the Plaintiff in the amount of $26,463.63. The Plaintiff filed the Complaint in the Superior Court of Fulton County, Georgia on September 27, 2011, and the Complaint was removed to this Court on October 27, 2011 [Doc. 1]. The Plaintiff requests relief in the amount of $40,633.89, claiming that many of the claims she submitted were improperly denied by Aetna.

III. Conclusions of Law

The Medical Plan is governed by the Employee Retirement Income Security Act ("ERISA"), which sets forth a comprehensive federal scheme for the enforcement of employee benefit plans. 29 U.S.C. § 1001, et seq. Aetna, as the plan administrator, determines which medical services the plan will reimburse. Id. Where an ERISA plan

---

[1] The vertical dimension of occlusion is the distance between the mandible (lower jaw) and maxilla (upper jaw) when the teeth are together in maximum intercuspation (teeth interposed tightly together).

provides discretion to the claim administrator to decide benefit claims or construe the plan, a court reviews the determination under an arbitrary and capricious standard. Lee v. Blue Cross/Blue Shield of Alabama, 10 F.3d 1547, 1549-50 (11th Cir. 1994). The Medical Plan explicitly gives Aetna this discretion. Courts in the Eleventh Circuit have adopted the following test for reviewing an administrator's determination:

> (1) Apply the *de novo* standard to determine whether the claim administrator's benefits-denial decision is "wrong" (i.e., the court disagrees with the administrator's decision); if it is not, then end the inquiry and affirm the decision.
>
> (2) If the administrator's decision in fact is "*de novo* wrong," then determine whether he was vested with discretion in reviewing claims; if not, end judicial inquiry and reverse the decision.
>
> (3) If the administrator's decision is "*de novo* wrong" and he was vested with discretion in reviewing claims, then determine whether "reasonable" grounds supported it (hence, review his decision under the more deferential arbitrary and capricious standard).
>
> (4) If no reasonable grounds exist, then end the inquiry and reverse the administrator's decision; if reasonable grounds do exist, then determine if he operated under a conflict of interest.
>
> (5) If there is no conflict, then end the inquiry and affirm the decision.

Lee v. BellSouth Telecomms., Inc., 318 Fed. Appx. 829, 835-36 (11th Cir. 2009), citing Williams v. BellSouth Telecomms., Inc., 373 F.3d 1132, 1138 (11th Cir. 2004).

The Court begins with step one of the Williams analysis, and considers whether

Aetna's benefits determination was *de novo* wrong. In determining whether Aetna's benefits decision was *de novo* wrong, the Court should "stand in the shoes of [Aetna] and start from scratch, examining all the evidence before [Aetna] as if the issue had not been decided previously." Stiltz v. Metropolitan Life Ins. Co., No. 1:05-CV-3052, 2006 WL 2534406, at *6 (N.D. Ga. 2006), aff'd, 244 Fed. Appx. 260 (11th Cir. 2007). In making this inquiry, the record will be restricted to "the facts as known to the administrator at the time the decision was made." Jett v. Blue Cross & Blue Shield of Alabama, 890 F.2d 1137, 1139 (11th Cir. 1989). "[W]hen the court makes its own determination of whether the administrator was 'wrong' to deny benefits under the first step of the Williams analysis, the court applies the terms of the policy." Ruple v. Hartford Life & Accident Ins. Co., 340 Fed. Appx. 604, 611 (11th Cir. 2009).

The Court believes that Aetna's benefits decision was *de novo* correct. The Court finds that the declined procedures, including crowns, bridge-retainers, and pontics, were conducted as treatment of TMJ with a non-surgical method to alter vertical dimension. For the reasons set forth above in the findings of fact, the procedures that Aetna found not to be covered by the Medical Plan were not surgical. Finding that the plan administrator's interpretation was legally correct, the Court's inquiry is over. Adams v. Thiokol Corp., 231 F.3d 837, 843 (11th Cir. 2000).

Yet, the Court notes that if it were to proceed past step one of the Williams test,

it would only overturn Aetna's denial of benefits decision if it were arbitrary and capricious, and would take any potential conflict into account at this stage. Tyrell v. Aetna Life Ins. Co., No 1:07-CV-526-ODE, at *15 (N.D. Ga. Oct. 30, 2009). Under the arbitrary and capricious standard, "[a]s long as a reasonable basis appears for [Aetna's] decision, it must be upheld as not being arbitrary or capricious, even if there is evidence that would support a contrary decision." Jett, 890 F.2d at 1140. It is clear from the findings of fact that there was at least a reasonable basis for Aetna's decision. Aetna's decision was neither arbitrary nor capricious, with no conflict of interest, and should be affirmed.

## IV. Conclusion

For the reasons set forth above, the Court treats the motions as a Trial on the Papers, and decides the case in favor of the Defendant. Alternatively, the Plaintiff's Motion for Summary Judgment [Doc. 20] is DENIED and the Defendant's Motion for Judgment on the Administrative Record [Doc. 21] is GRANTED.

SO ORDERED, this 30 day of October, 2012.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge